## Richmond.

### VIRGINIA BREWING CO. V. COMMONWEALTH.

January 18, 1912.

1. TAXATION—*License—Voluntary Payment—Recovery Back—Case at Bar.*—
   Where an application by a brewing company for a license to establish
   a distributing house for the sale of its products is refused, unless the
   company will pay a license tax in addition to that already paid by it
   in another city in which the brewery is located, and the company
   thereupon pays the tax in order to obtain the license, which it could
   not otherwise obtain, and in order to avoid prosecutions to which it
   would be subjected if it undertook to do business without the license,
   such payment is voluntary, and not compulsory, and hence cannot
   be recovered back.   The compulsion contemplated by law exists
   where the party called upon must pay or suffer his property or person
   to be taken.

Error to a judgment of the Corporation Court of the city of
Lynchburg, on a petition filed asking to have a license tax refunded.
To an adverse judgment the petitioner assigns error.

*Affirmed.*

The opinion states the case.

*Harper & Goodman,* for the plaintiff in error.

*Samuel W. Williams,* Attorney-General, and *Richard B. Davis,*
his assistant, for the Commonwealth.

KEITH, P., delivered the opinion of the court.

The Virginia Brewing Company filed its petition in the Corpora-
tion Court of the city of Lynchburg, to have refunded to it a tax
with which it claims to have been erroneously assessed, and which
it paid involuntarily and under protest.   The Commonwealth's

attorney for the city of Lynchburg appeared and made defense to the petition, and the case was heard upon facts agreed between the attorneys for the petitioner and the Commonwealth; and thereupon the corporation court dismissed the petition, a bill of exceptions was taken to the ruling, and the case is before us upon a writ of error.

The agreed facts are as follows: That the Virginia Brewing Company is a corporation engaged in the business of manufacturing and selling malt liquors in the State of Virginia; that for the years 1910 and 1911 it was assessed and paid to the State of Virginia, in the city of Roanoke, where its manufactory is located, a license tax, for the privilege of manufacturing malt liquors and selling the products of its brewing, in quantities of two dozen pints or more, at any place within the State of Virginia; that on the 22d day of April, 1911, it applied to the Corporation Court of the city of Lynchburg for a license giving it the privilege to establish a distributing house, for selling the products of its brewing, in quantities of two dozen pints or more, through an agency, said agency and business to be conducted in Lynchburg, Virginia; that it presented to the court proof of the payment to the State of Virginia, at Roanoke, Virginia, of the tax for the privilege of manufacturing and selling its products as aforesaid; that upon consideration of said application the court declined to grant the license applied for, and advised the said applicant, through its counsel, that in the opinion of the court such business could only be legally conducted in the city of Lynchburg upon the payment of an additional wholesale malt liquor dealer's license tax to the State of Virginia, and that the conduct of such business without the payment of such additional tax would render the company and its agents liable to criminal prosecution, with its attendant fines and penalties; that thereupon the said Virginia Brewing Company was assessed with, and involuntarily paid under protest to the State of Virginia, at the city of Lynchburg, the sum of $500, as a license tax for the privilege of conducting a wholesale liquor dealer's business in the said city of Lynchburg, and, upon due application to the corporation court, and upon proof of all facts essential to the granting of such license, the Corporation Court of the city of Lynchburg, at the May term, 1911, did grant to the

said Virginia Brewing Company a wholesale malt liquor dealer's license, for the conduct of said business in said city; that it was not the desire or intent of said Virginia Brewing Company to conduct a wholesale malt liquor dealer's business, but to establish and maintain a storage and distributing warehouse in the city of Lynchburg for the sale thereat of its products, and that it was assessed with, and involuntarily paid under protest, the license tax, and accepted the said privilege only because of the advice of the Corporation Court of the city of Lynchburg that the establishment and maintenance of said storage or distributing warehouse in the said city, for the sale of its products thereat, without the payment of said wholesale malt liquor dealer's license, would render the said company and its agents liable to criminal prosecution, with its attendant fines and penalties, and to avoid the liability of such criminal prosecution.

In the agreed facts it is stated that the tax was paid involuntarily, and yet the facts themselves show that it was in all respects a voluntary payment. The brewing company, of its own motion, applied for a license giving it the privilege of establishing a distributing house in the city of Lynchburg, for selling the products of its brewing, in quantities of two dozen pints or more; the corporation court advised the petitioner that this could only be done by granting to it a wholesale malt liquor dealer's license for the conduct of its business in the city. It did not require the brewing company to take out the license; its property was not seized; no penalty had been adjudicated against it; and there was no element of that compulsion which the law contemplates when it says that a tax involuntarily paid under protest may be recovered—certainly there was no erroneous assessment under section 567 of the Code. The brewing company took out a wholesale malt liquor dealer's license, for which it was required by law to pay $500, and it did so of its own free will.

In Burroughs on Taxation, at page 443, it is said that "Where the party, of his own motion, procures his license and pays the tax, if the tax be afterwards judicially decided to be illegal, he cannot recover. Such payment is not under compulsion, although the pursuit of the occupation, without the payment of the license tax, would subject the party to fine and imprisonment.''

The same author says, at page 266: "It is a well-settled principle of law that a voluntary payment of money, under a mistake of law, lays no foundation for an action to recover back the money so paid."

The compulsion contemplated by law exists where the party called upon must pay, or suffer his property or person to be taken.

As was said by Judge Campbell, in *Atwell* v. *Zeluff*, 26 Mich. 118: "Where an officer demands a sum of money under a warrant directing him to enforce it, the party of whom he demands it may fairly assume that, if he seeks to act under process at all, he will make it effectual. The demand is equivalent to the service of a writ on the person. Any payment is to be regarded as involuntary which is made under a claim involving the use of force, and he cannot be held to expect that the officer will desist after once making demand. The exhibition of the warrant directing forcible proceedings, and the receipt of money thereon, will be in such case equivalent to actual compulsion."

The principles thus stated in Burroughs are fully sustained by the adjudicated cases.

In *Town Council of Cahaba* v. *Burnett*, 34 Ala. 400, it was held that a payment of money to the clerk of a town council, as the price of a license for retailing spirituous liquors, under an ordinance afterwards declared void by the supreme court, cannot be considered to have been made under compulsion because the ordinance imposed a fine and imprisonment as the penalty for retailing without license, and consequently the money cannot be recovered by action.

In *Taylor* v. *Board of Health*, 31 Pa. St. 73, 72 Am. Dec. 724, it was held that payment of a tax is not compulsory because made under a threat, express or implied, that legal remedies for it will be resorted to. *Cook* v. *City of Boston*, 9 Allen (Mass.) 393.

"Where a person with full knowlege of the facts, voluntarily pays a demand unjustly made upon him, though attempted or threatened to be enforced by proceedings, it will not be considered as paid by compulsion, and the party thus paying is not entitled to recover back the money paid, though he may have protested against the unfounded claim at the time of payment made. Where money has been paid under a mistake of the facts, or under cir-

cumstances of fraud or extortion, or as a necessary means to obtain the possession of goods wrongfully withheld from the party paying the money, an action may be maintained for the money wrongfully exacted.   But such action is not maintainable in the naked case of a party making payment of a demand rather than resort to litigation, and under the supposition that the claim, which subsequently turned out to be unauthorized by law, was enforcible against him or his property." *Lester* v. *Baltimore*, 29 Md. 415, 96 Am. Dec. 542.

The payment in the case in judgment was made with full knowledge of all the facts—unwillingly, it is true, but not under such compulsion as the law contemplates; and the judgment of the corporation court must be affirmed.

*Affirmed.*